UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| City of Eastlake, et al., | ) | CASE NO. 1:07 CV 1867 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| St. Paul Fire and Marine Insurance | ) | Memorandum of Opinion and Order |
| Company, | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 10) and plaintiffs' Motion for Summary Judgment (Doc. 11). This is a declaratory judgment action concerning insurance coverage for an underlying state court lawsuit filed against a municipality and some of its officials. For the following reasons, defendant's motion is GRANTED and plaintiffs' Motion is DENIED.

**Facts**

Plaintiffs, the City of Eastlake and other current or former city officials (Ted Andrzejewski, Mike Slocum, Bryan Lajeunesse, Laura DePledge, Bruno Razov, David Knuchel, Mike Zontini, Derek Elshaw and Dennis Morley) filed this lawsuit against

1

defendant, St. Paul Fire and Marine Insurance Company, in the Lake County Court of Common Pleas.  The matter was thereafter removed to this Court by defendant on the basis of diversity jurisdiction.

In August 2005, a complaint was filed against plaintiffs herein in the Lake County Court of Common Pleas entitled *Richard Fatur v. City of Eastlake, et al.,* Case No. 05 CV 001922 (hereafter, the *Fatur* case).[1]  The City of Eastlake tendered defense of the lawsuit to defendant herein, the City's liability insurer.  Defendant had issued a policy of liability insurance (hereafter, the policy) to Northern Ohio Risk Management Association, Inc. and its member cities, including the City of Eastlake.  The policy was in effect from October 1, 2004 until October 1, 2005.  Defendant declined coverage on the basis that the policy does not cover the claims asserted in the *Fatur* case.  Requests for reconsideration were likewise denied.

The Second Amended Complaint[2] in the *Fatur* case alleges the following.  Fatur is bringing the lawsuit as a taxpayer and resident of the City of Eastlake.  In 1986, a sewer tax levy authorized collection of $7.1 million over twenty years, in order to repay debt on the costs of improving the Willoughby-Eastlake Wastewater Treatment Plant and Eastlake's Sanitary Sewage Collection System.  Eastlake collected the sewer tax for the years 1986-2004 regardless of the actual amount needed to satisfy the yearly obligation under the Tax Levy, and Eastlake used the excess funds collected pursuant to the tax levy for other City debts

---

[1] Apparently, several motions to dismiss are pending in the state court.

[2] A copy of the Second Amended Complaint filed in the *Fatur* case as well as relevant portions of the subject insurance policy have been filed with this Court. (Doc. 9)

and/or expenses. The actual amount needed to satisfy the total tax levy obligation was fully collected by 1999. Despite having over-collected on the tax levy, Eastlake continued to make improper budget requests under the tax levy for the years 2000-2005, and spent funds collected. Eastlake further failed to keep the tax levy distributions in a separate trust fund, as required by Ohio law. The Second Amended Complaint asserts five claims. Count One seeks a writ of mandamus requiring Eastlake to comply with Ohio law concerning the sewer tax levy. Count Two alleges that Eastlake conducted a criminal enterprise that engaged in a pattern of corrupt activity in violation of Ohio's RICO statute. Count Three seeks a declaratory judgment concerning Eastlake's alleged violation of Ohio's racketeering statute. Count Four seeks injunctive relief ordering all defendants to immediately stop the disbursement of the 2005 second-half property taxes collected pursuant to the tax levy. Count Five seeks a declaratory judgment requiring the compliance of the City of Eastlake with Ohio Revised Code §118.

The Complaint herein alleges that the City of Eastlake submitted the *Fatur* case to defendant asserting that it is entitled to protection, a defense and coverage under the terms of the policy. Defendant denied coverage of the claim and reconsideration thereof. Plaintiffs then brought this lawsuit for a declaratory judgment that defendant has a duty to protect, defend and cover the City of Eastlake in the *Fatur* case under the terms of the policy.

This matter is before the Court upon the parties' cross-Motions for Summary Judgment. The motions will be addressed jointly.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and

the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

4

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Defendant argues that summary judgment is appropriate in its favor in that it has no duty to defend or indemnify the City of Eastlake with regard to the *Fatur* case because its policy does not cover the claims asserted in that case for the following reasons: 1) Defendant has no defense obligation under the policy.  2) The policy excludes coverage for loss resulting from improper administration or collection of taxes, or loss that reflects any tax obligation.  3) The policy excludes coverage for loss resulting from any criminal, dishonest, fraudulent, or intentionally wrongful act or omission.  4) The policy excludes coverage for any claims seeking declaratory, injunctive, or other non-monetary relief.

Plaintiffs argue that summary judgment is appropriate in their favor based on the coverage provided under the criminal, dishonest, fraudulent, or intentionally wrongful acts exception to the policy's coverage exclusions in that the *Fatur* case expressly alleges that defendants conspired to engage in a pattern of corrupt activity involving theft and other crimes.

This Court must construe the insurance policy in its entirety, giving effect to all of its provisions. *See Cincinnati Ins. Co. v. Lohri,* 2005 WL 2388216 (Ohio App. 10th Dist. September 29, 2005).  For the following reasons, this Court disagrees with plaintiff's assertion that an exception to an exclusion creates coverage.  Rather, the policy does not create a duty to defend.  Additionally, even if a duty to defend existed, two exclusions apply to preclude coverage.

The policy's liability form is written on a claims-made basis, and has a limit of liability of $1 million per "wrongful act," subject to a self-insured retention of $100,000.00 per wrongful act. The policy's principal coverage form provides:

> **Public Entity Management Liability Protection-**
> **Claims-Made**
>
> \*\*\*
>
> **What This Agreement Covers**
>
> **Public Entity Management Liability Protection**. We'll pay amounts any protected person is legally required to pay as damages for covered loss that:
>
> • results from the conduct of duties by or for a public entity;
>
> • is caused by a wrongful act committed on or after the
> retroactive date and before the ending date of this
> agreement; and
>
> • results in a claim first made or brought while this
> agreement is in effect, or during a limited reporting period
> or the extended reporting period, if either one applies.
>
> We'll consider each wrongful act in a series of related wrongful acts to
> be committed on the date the first wrongful act in the series of
> related wrongful is committed.
>
> \*\*\*

6

> *Wrongful act* means any act, error, or omission.
>
> ***
>
> **Right and duty to defend a claim.** We'll have the right and duty to defend any protected person against a claim for covered loss.
>
> We'll do so even if any of the allegations of such claim are groundless, false, or fraudulent. But we don't have a duty to perform any other act or service.
>
> ***

The Public Sector Services Public Entity Management Liability Self-Insured Retention

Endorsement deletes this provision, however, by providing:

> This endorsement changes your Public Entity Management Liability Protection-Claims-Made
>
> **How Coverage is Changed**
>
> There are seven changes which are explained below.
>
> 1. The following replaces the right and the duty to defend section.
> This change limits coverage.
>
> **Right to investigate or defend**. We'll have the right to investigate or defend any claim or suit for covered loss made or brought against any protected person. We may exercise such rights even if:
>
> • any of the allegations of any such claim or suit are
> groundless, false or fraudulent; or
>
> • the total amount of the damages and claim expenses for
> such loss probably won't exceed a self-insured retention
> that applies.
>
> ***
>
> However we have no duty to defend any claim or suit or perform
> other acts or services. In addition, our right to defend claims or
> suits ends when the limits of coverage that apply have been used
> up with the payment of judgments or settlements.

7

\*\*\*

On the basis of this endorsement, defendant has no *duty* to defend any claim, but only the right to defend the claim.[3]  As the Ohio Supreme Court stated in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216 (2003) (citations omitted),

> We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.

There is nothing ambiguous about the Self-Insured Retention Endorsement's elimination of the right and duty to defend provision.  Rather, the ordinary meaning of the endorsement is that defendant no longer has a duty to defend any claim.

Plaintiffs argue that while the Self-Insured Retention Endorsement modifies the policy's right and duty to defend a claim provision, it does not modify the policy's criminal, dishonest, fraudulent, or intentionally wrongful acts provision which states:

**Exclusions - What This Agreement Won't Cover**

---

[3]   Defendant states that the City of Eastlake elected to purchase an insurance policy with a large self-insured retention, and without any defense provision. A self-insured retention is the amount the insured is responsible to pay before the insurance policy will pay.  *See Law of Commercial Agents and Brokers* (LCAAB) § 5:2, 2007 WL 73237971 (2007) ("The term self-insured retention (or SIR) refers to that portion of each loss that is retained and (paid) by the insured. This retained amount is sometimes referred to as the "retained limit." ) Furthermore, it has been recognized that "[t]he difference between a self-insured retention and a deductible is usually that, under policies containing a self-insured retention, the insured assumes the obligation of providing itself a defense until the retention is exhausted."  Allan D. Windt, 2 *Insurance Claims and Disputes* 4th § 1131. *See also Aerojet-General Corp. v. Transport Indemnity Co.*, 45 Cal.App.4th 1192, 53 Cal.Rptr.2d 398 (1996) (where entity makes business decision to retain portion of risk, no duty to defend exists until retention limits are exhausted).

8

> \*\*\*
>
> **Criminal, dishonest, fraudulent, or intentionally wrongful acts.** We won't cover loss that results from any criminal, dishonest, fraudulent, or intentionally wrongful act or omission committed:
>
> •       by the protected person; or
>
> •       with the consent or knowledge of the protected person.
>
> However, we won't apply this exclusion to our duty to defend that protected person until it has been determined by legal processes that such act or omission was committed:
>
> •       by the protected person; or
>
> •       with the consent or knowledge of the protected person.

Plaintiffs assert that the *Fatur* case directly implicates the insurance coverage as provided by this section of the policy. In particular, Count Two of the *Fatur* case alleges corrupt activity in that plaintiffs knew their actions were false and/or illegal in violation of Ohio Revised Code provisions which define the crimes of theft and theft in office. Accordingly, plaintiffs assert that under this policy provision, defendant is required to provide coverage until such time as this Court determines that such a criminal, dishonest, or intentionally wrongful act occurred by the insured.

Defendant argues that the criminal, dishonest, fraudulent, or intentionally wrongful acts exclusion does not create an independent duty to defend. For the following reasons, this Court agrees.

As stated above, the policy's principal coverage form provides that defendant has both a right and duty to defend covered claims. The policy's intentional act exclusion then provides that there is no coverage for loss resulting from criminal, dishonest, fraudulent, or

9

intentionally wrongful acts or omissions, but that defendant "won't apply this exclusion to our duty to defend that protected person until it has been determined by legal process" that such an act or omission was committed. The Self-Insured Retention Endorsement, however, deletes the right and duty to defend provision, and provides instead that defendant has the right, but not the duty, to defend covered claims. Consequently, the only reasonable construction of the policy is that the reference to "our duty to defend" in the intentional act exclusion is a nullity given that there is no policy provision creating a duty to defend. *See Lincoln Elec. Co. v. St. Paul Fire and Marine Ins.* Co., 993 F.Supp. 1131, 1134 (N.D.Ohio,1998)(citations omitted) ("It is a well-recognized rule of construction that the terms of an insurance policy shall be construed in the plain, ordinary, and popular sense of the language and words used. It is implicit in this rule of construction that a court should not read ambiguity, doubt, and equivocation into words of common meaning and understanding.")

Additionally, as pointed out by defendant, where there is a "conflict between the general policy and the terms of the endorsement, the terms of the endorsement control." *Progressive Max Insurance v. Grange Mutual Casualty Company,* 2003 WL 22019604 (Ohio 8th App. Dist. Aug. 28, 2003) (citing *Baker v. Aetna Cas. & Sur. Co.,* 107 Ohio App.3d 835 (1975) ).  Thus, even if there did exist a conflict, the endorsement controls to delete the policy's duty to defend provision.

Next, defendant points out that courts have recognized the rule that exclusions do not create coverage, but they exclude coverage. *Ohio Valley Livestock Corp. v. Val Decker Packing Co.,* 1982 WL 3763 (Ohio 2d App. Dist. July 21, 1982) (citations omitted) ("Exclusions do not *create* coverage; they *exclude* coverage... An exclusionary clause

10

generally cannot be said to create coverage where none existed before.") Here, plaintiffs are attempting to find coverage within an exclusion clause. Based on Ohio law prohibiting such, the exception to the intentional act exclusion cannot create a duty to defend.

Finally, plaintiffs attempt to draw a distinction between the policy's definition of a "wrongful act" as "any act, error, or omission," and an "intentionally wrongful act" as identified, but not defined, in the criminal, dishonest, fraudulent, or intentionally wrongful acts exclusion. Plaintiffs contend that because the policy's Coverage Summary states that the Self-Insured Retention limit of $100,000.00 is relevant to "wrongful acts," as opposed to "intentionally wrongful acts" referred to in the criminal, dishonest, fraudulent, or intentionally wrongful acts exclusion, an ambiguity is created which must be interpreted in favor of providing coverage. Defendant asserts that there is no ambiguity. This Court agrees. The policy states that it covers claims alleging a "wrongful act." The policy, however, then excludes coverage for wrongful acts that are intentional, criminal, or fraudulent. As discussed above, the Self-Insured Retention Endorsement then deletes the policy's duty to defend to defend provision by stating that defendant has "no duty to defend *any* claim or suit or perform other acts or services." (emphasis added) As such, the provision is clear that defendant has no duty to defend.

In addition to asserting that it has no defense obligation under the policy, defendant contends that because all of Fatur's claims relate to the City of Eastlake's alleged improper administration or collection of taxes, the allegations fall within the policy's exclusion of coverage for loss resulting from improper administration or collection of taxes, or loss that reflects any tax obligation. Additionally, the policy's exclusion of coverage for any claims

11

seeking declaratory, injunctive, or other non-monetary relief is applicable. Again, this Court agrees.

The Public Entity Management Liability Protection form excludes coverage as follows:

> **Exclusions-What This Agreement Won't Cover**
>
> \*\*\*
>
> **Declaratory, injunctive, or other non-monetary relief**. We won't cover:
>
> • any cost, expense, or fee; or
>
> • any amount required to comply with a court or administrative agency order, judgment, ruling or decree, or a federal, state, or local law;
>
> that results from any action or demand, or any part of any claim, which seeks declaratory, injunctive, or other non-monetary relief.
>
> \*\*\*
>
> *Declaratory, injunctive, or other non-monetary relief* includes:
>
> • a judgment which declares the rights and duties of any person or organization; or
>
> • any type of injunction, restraining order, or any other nonmonetary relief.
>
> \*\*\*
>
> **Taxes.** We won't cover loss that results from the improper administration or collection of taxes, or loss that reflects any tax obligation.
>
> \*\*\*

The claims asserted in the *Fatur* case fall within these exclusions.  As discussed above, the *Fatur* case alleges the City of Eastlake's improper collection of taxes under a 1986 sewer tax levy, and improper administration of the tax proceeds. The Second Amended Complaint

alleges that the 1986 tax levy was for the purpose of paying "debt charges" for improvements to the Willoughby-Eastlake Wastewater Treatment Plant and to Eastlake's Sanitary Sewage Collection System. It further alleges that the City of Eastlake collected the maximum tax levy amount of 2.5 mills for the years 1986-2004 "regardless of the actual amount needed to satisfy the yearly obligation under the Tax Levy," and that the City of Eastlake "improperly used excess funds collected pursuant to the Tax Levy for other City debts and/or expenses." The *Fatur* case further alleges that the excessive collection and improper spending were not made public until September 2004," and that defendants therein failed to "keep the Tax Levy distributions in a separate trust fund earmarked solely for Tax Levy purposes as mandated by law . . ."

These allegations clearly relate to plaintiffs' alleged improper administration or collection of taxes and, therefore, fall within the policy's exclusion for "loss that results from the improper administration or collection of taxes, or loss that reflects any tax obligation."

Additionally, Counts One, Three, Four and Five of Fatur's Second Amended Complaint seek declaratory, injunctive, or other non-monetary relief.  Accordingly, the policy excludes coverage for these claims.

Plaintiffs argue that there is a conflict between the tax exclusion and the exclusion for criminal, dishonest, fraudulent, or intentionally wrongful acts and, therefore, defendant is obligated to provide coverage.  Plaintiffs do not address the exclusion for declaratory, injunctive, or other non-monetary relief.  For the following reasons, plaintiffs' argument with regard to the tax exclusion is not persuasive.

Plaintiffs assert that the *Fatur* case implicates both the tax exclusion and the criminal,

13

dishonest, fraudulent, or intentionally wrongful acts exclusion.  Plaintiffs contend, however, that there is a conflict between the two exclusions because the latter has a specific requirement that coverage will be provided until there is a finding of wrongful conduct while the former exclusion has no such limitation.  On this basis, plaintiffs assert that the criminal, dishonest, fraudulent, or intentionally wrongful acts provision is the more specific exclusion because it defines an exception providing certain coverage and, thus, the conflict must be resolved in plaintiffs' favor to give effect to the more specific provision.

Again, as discussed above, the Self-Insured Retention Endorsement deletes the policy provision imposing a duty to defend, regardless of the *Fatur* case's allegations.  Thus, the reference to the duty to defend in the criminal, dishonest, fraudulent, or intentionally wrongful acts exclusion is likewise deleted. Moreover, the two exclusions argued by defendant apply.  Plaintiffs concede the tax exclusion applies and fail to even address the declaratory, injunctive, or other non-monetary relief exclusion.  Coverage would, therefore, be precluded on the basis of these two exclusions and the Court need not address the criminal, dishonest, fraudulent, or intentionally wrongful acts exclusion.  *See* 17 Williston on Contracts § 49:111 (4th ed.) (citing *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467 (2005) ) ("In policies of insurance, if any one exclusion applies there can be no coverage.") In fact, as defendant points out, there are other inapplicable exclusion provisions which does not take away from the fact that the two noted exclusions do apply.

Finally, plaintiffs' reliance on *Edmonson v. Motorists Mutual Insurance Co.,* 48 Ohio St.2d 52 (1976) is unavailing.  In *Edmonson*, certain critical terms were defined in one section of the insurance policy but not in another part of the policy and, thus, the court found that this

14

left the policy open to differing reasonable interpretations.  Accordingly, it determined that the policy  must be construed favorably for the insured.   Plaintiffs assert that the insurance provisions in the herein case are likewise unclear and in conflict given that the criminal, dishonest, fraudulent, or intentionally wrongful acts exclusion contains a duty to defend provision until there is a finding of wrongful conduct, while the tax exclusion does not.  As discussed above, however, the plain meaning of the policy is that coverage is precluded for claims relating to the improper administration or collection of taxes, and for claims seeking declaratory, injunctive, or non-monetary relief.  Notwithstanding these applicable exclusions, the duty to defend contained in the wrongful acts exclusion became a nullity with the Self-Insured Retention Endorsement.

For these reasons, defendant has no duty to defend or indemnify plaintiffs in the *Fatur* case.

**Conclusion**

For these reasons, defendant's Motion for Summary Judgment is granted and plaintiffs' Motion for Summary Judgment is denied.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/22/08